UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-8451-KK-JPRx** | | Date: | May 23, 2025 |
|---|---|---|---|---|

| Title: | *Vahe Messerlian v. JP Group LA* |
|---|---|

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING Plaintiff's Motion for Default Judgment [Dkt. 65]**

## I.
## INTRODUCTION

On December 7, 2023, plaintiff Vahe Messerlian ("Plaintiff") filed the operative First Amended Complaint ("FAC") against defendants JP Group LA ("JPG") and Columbian Festival, Inc. ("CFI") (collectively, "Defendants") asserting violations of the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §§ 227, et seq. ("Section 227").  ECF Docket No. ("Dkt.") 14, FAC.

On March 26, 2025, the Court struck Defendants' Answer to the FAC and directed the Clerk of Court to enter default against Defendants following their counsel's withdrawal and their failure to file a notice indicating they had obtained new counsel.[1]  Dkt. 62.  On April 15, following the entry of default by the Clerk of the Court, Plaintiff filed the instant Motion for Default Judgment ("Motion").  Dkt. 65, Motion ("Mot.").

---

[1] Defendants cannot appear in federal court without the representation of an attorney.  See L.R. 83-2.2.2 ("Only individuals may represent themselves *pro se*.  No organization or entity of any other kind (including corporations, limited liability corporations, partnerships, limited liability partnerships, unincorporated associations, trusts) may appear in any action or proceeding unless represented by an attorney permitted to practice before this Court under L.R. 83-2.1.") (emphasis in original).

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R.
Civ. P. 78(b); L.R. 7-15.  For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On October 6, 2023, Plaintiff initiated this class action suit against Defendants, asserting
violations of the TCPA under Section 227.  Dkt. 1.  On December 7, 2023, Plaintiff filed the
operative FAC.  FAC.  In the FAC, Plaintiff raises two causes of action pursuant to Section 227: (1)
violations of the TCPA pursuant to Section 227(b)(1), and (2) violations of the TCPA regarding the
National Do-Not-Call Registry ("DNC") pursuant to Section 227(c)(5).  Id. at 21-23.  Plaintiff seeks
injunctive relief, statutory damages related to Defendants' alleged unlawful practices, attorneys' fees,
and costs.  Id. at 24.

On February 8, 2024, Defendants filed an Answer to the FAC.  Dkt. 23.

On February 19, 2025, Defendants' counsel filed a motion to withdraw as counsel, citing
"the attorney client relationship was irreparably damaged, in part due to lack of trust, poor
communication and [Defendants'] expressed intent to seek new counsel."  Dkt. 56-1, Declaration of
Omer Martin Quiroz, ¶ 4.  On March 7, 2025, the Court granted counsel's motion to withdraw and
ordered Defendants to retain new counsel.  Dkt. 59.  The Court expressly advised Defendants they
could not appear in federal court without the representation of an attorney.  Id. at 2.  The Court
further warned Defendants failure to comply would result in the Court striking their Answer and
deeming Defendants defaulted.  Id.

Defendants failed to comply with or otherwise respond to the Court's March 7, 2025 Order.
Hence, on March 26, 2025, the Court struck Defendants' Answer to the FAC and directed the Clerk
of Court to enter default against Defendants.  Dkt. 62.  That same day, the Clerk of Court entered
default against Defendants pursuant to Federal Rule of Civil Procedure 55(a).  Dkt. 63.

On April 15, 2025, Plaintiff filed the instant Motion.  Mot.  In support of the Motion,
Plaintiff filed declarations by Plaintiff, dkt. 65-2, Declaration of Vahe Messerlian ("Messerlian
Decl."), and Gustavo Ponce, counsel for Plaintiff, dkt. 65-3, Declaration of Gustavo Ponce ("Ponce
Decl.").

As of the date of this Order, Defendants have not filed an Opposition to the Motion.

This matter, thus, stands submitted.

### B.    RELEVANT FACTS

As alleged in the FAC, Plaintiff is a resident of Los Angeles County and was the owner of a
cellular phone number ending in 1700 ("Cell Phone").  FAC ¶¶ 12, 37.  Defendant JPG is a
California company with its place of business in California.  Id. ¶ 13.  Defendant CFI is a California
corporation with its principal place of business in California.  Id. ¶ 14.

According to the FAC, Plaintiff did not have "an established business relationship" or "a personal relationship" with Defendants. Id. ¶¶ 62-63. Plaintiff also did not "give prior express invitation or consent in writing for Defendants to message Plaintiff's Cell Phone for marketing or solicitation purposes," and Plaintiff's Cell Phone number "has been registered on the DNC since December 10, 2004." Id. ¶¶ 54, 59. Nonetheless, between April 17, 2021, and July 22, 2023, Defendants sent Plaintiff numerous automated "unsolicited text messages promoting 'Colombian Festival' and/or 'Festival Colombiano' events" from Defendants' various telephone numbers. Id. ¶¶ 31, 34, 39. Specifically, Plaintiff alleges receiving 12 text messages from Defendants, and "identical [ ] text messages were sent by Defendants through the same or similar text solicitation campaigns, to numerous other consumers." Id. ¶¶ 40-56, 65. Further, Plaintiff alleges he "received numerous telephone solicitations from Defendants within a 12-month period within the four years prior to the filing of the Complaint[.]" Id. ¶ 60. Plaintiff also alleges "Defendants sent substantially similar, if not identical, unsolicited messages *en masse* to Plaintiff and thousands of other consumers who were also registered with the DNC[.]" Id. ¶ 66 (emphasis in original).

Additionally, since initiating this action, Plaintiff continues to receive text messages from Defendants and received a text promoting the "Colombian Festival" event as recently as March 8, 2025. Messerlian Decl. at 3.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny an application for default judgment is discretionary. Allstate Life Ins. Co. v. Markowitz, 590 F. Supp. 3d 1210, 1215 (C.D. Cal. 2022) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980)).

In determining whether to enter default judgment against a party, a court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default against a defendant, the court takes "'the well-pleaded factual allegations' in the complaint 'as true.'" DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (quoting Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992)). However, "a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps, 980 F.2d at 1267 (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)). In addition, allegations as to the amount of damages must be proven. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Finally, pursuant to Local Rule 55-1, an application for default judgment must be accompanied by a declaration setting forth: when, and against what party, default was entered; the pleading to which default was entered; whether the defaulting party is an infant or incompetent

person; that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and that notice has been served on the defaulting party, if required. L.R. 55-1. The party applying for default judgment must also provide the defaulting party with notice of the application if the defaulting party has appeared in the action or the applicant seeks unliquidated damages. Fed. R. Civ. P. 55(b)(2); L.R. 55-2.

## IV.
## DISCUSSION

### A.  THE MOTION SATISFIES THE APPLICABLE PROCEDURAL REQUIREMENTS

As an initial matter, the instant Motion satisfies the procedural requirements set forth in the Federal Rules of Civil Procedure and the Court's Local Civil Rules. Plaintiff submitted a declaration that complies with Local Rule 55-1. See Ponce Decl. Specifically, the Ponce declaration states (1) default was entered against Defendants on March 26, 2025, (2) default was entered pursuant to the Court's Order on March 26, 2025, (3) Defendants are not infants or incompetent persons, and (4) Defendants are not officers or agents of any state or in the military service under the Servicemembers Civil Relief Act. Id. ¶¶ 10-12. Plaintiff has also served the Motion on Defendants. Dkt. 65-1 at 8.

### B.  THE EITEL FACTORS WEIGH IN FAVOR OF GRANTING DEFAULT JUDGMENT AGAINST DEFENDANTS

Additionally, as discussed below, the Eitel factors weigh in favor of granting default judgment against Defendants.

#### 1.  Possibility of Prejudice to Plaintiff

The first Eitel factor is "whether the plaintiff will suffer prejudice if default judgment is not entered." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, in light of Defendants' failure to obtain counsel as required for them to proceed in this case, Plaintiff "will likely be without other recourse for recovery." See id.; see also Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (finding prejudice to plaintiff favored entering default judgment because, "[i]f the Court does not enter a default judgment, it will allow [the defendant] to avoid liability by not responding to [the plaintiff's] claims").

Accordingly, the first Eitel factor weighs in favor of entering default judgment.

#### 2.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors are "the merits of [the plaintiff's] substantive claim" and "the sufficiency of the [claim]." PepsiCo, Inc., 238 F. Supp. 2d at 1175. These factors, which "are often analyzed together," Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010), require a plaintiff to "state a claim on which the [plaintiff] may recover," PepsiCo, Inc., 238 F. Supp. 2d at 1175. A claim "satisfies this test when the claims 'cross the line from conceivable to plausible.'" Indian Hills Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 886 (S.D. Cal. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)). In performing this analysis, courts take "the well-

pleaded factual allegations in the [claim] as true." DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted).

Here, as discussed below, the allegations in the FAC are sufficient to state a claim for the TCPA violations. FAC at 21-23.

> **a.    Cause of Action One: Violations of the TCPA Pursuant to Section 227(b)(1)**

Under Section 227(b)(1) of the TCPA, it is unlawful for a person within the United States "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" to any cellular or wireless telephone. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, a subscriber to the phone number subjected to such calls has standing to sue for violations of the TCPA. Gutierrez v. Barclays Grp., No. 10-CV-1012 DMS-BGS, 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011). To recover under Section 227(b)(1), a plaintiff must show: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [("ATDS")]; [and] (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012). Specifically, "a text message is a 'call' within the meaning of the TCPA." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009).

An ATDS is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In assessing the plausibility of an ATDS claim, courts consider the following non-dispositive factors: "(1) the nature of the message with a generic, impersonal, or promotional message suggesting ATDS; (2) the number or frequency of messages, with repetitive messages sent over a short period of time suggesting ATDS; (3) [t]he ability to respond to or interact with the text messages (i.e., sending "Stop"), with interactivity of this character suggesting use of an ATDS; (4) the relationship between the parties, with a pre-existing relationship weighing against ATDS; (5) whether identical messages were sent to multiple numbers simultaneously; and (6) whether the message was sent from a SMS short code or long code, with a SMS short code suggesting an ATDS." Wilson v. Rater8, LLC, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *2 (S.D. Cal. Oct. 18, 2021) (citing Schley v. One Planet Ops Inc., 445 F. Supp. 3d 454, 459-60 (N.D. Cal. 2020)) (internal quotations omitted).

As an initial matter, Plaintiff alleges he was the owner of the Cell Phone number and is the sole user and subscriber of his Cell Phone number subjected to the alleged infringing communications. FAC ¶ 37. Therefore, Plaintiff has statutory standing to sue under the TCPA.

Further, Plaintiff sufficiently alleges a claim for recovery under Section 227(b)(1) of the TCPA. First, Plaintiff alleges he received "unsolicited and automated telemarketing text messages" from Defendants. Id. ¶¶ 31, 40, 43-56. Second, Plaintiff alleges Defendants used an ATDS. Specifically, Plaintiff alleges the 12 text messages from Defendants were "automated" and "consisted of a pre-written template of impersonal text and/or images, which upon information and belief, identical to text messages were sent by Defendants through the same or similar text solicitation campaigns, to numerous other consumers." FAC ¶¶ 31, 40, 43-56, 65. Plaintiff alleges the texts contain promotional language such as: "an image advertising 'Festival Colombiano 2021,' asking people to register and buy tickets for the event", a message stating "'EFC 2 day ticket sale starts now – 4-pack $240 or 8-pack $400'", messages asking people to register and buy ticket for

the event saying "Happening Now! The Colombian Festival a / 1-DAY TICKET SALE GA, VIP & CABANAS on sale today Only[,]" or "18 years strong biggest day party and festival is coming up. SUNDAY JULY 23RD / FESTIVAL COLOMBIANO / COME PARTY ON 3 MUSIC STAGES / 11AM TO 11PM – PURCHASE." Id. ¶¶ 41, 46, 48, 49; see also id. ¶¶ 51, 53, 54, 55, 56. Plaintiff also alleges he did not have "an established business relationship" or "a personal relationship" with Defendants. Id. ¶¶ 62-63. Based on these allegations, the Court finds Plaintiff has sufficiently alleged Defendants used an ATDS. See Charkchyan v. EZ Cap., Inc., No. 2:14-CV-03564-ODW, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015) (finding that text messages "formatted in SMS short code, '670–76,' and the impersonal manner that the texts were scripted support a reasonable inference that the text messages were sent using an ATDS"); see also Schley, 445 F. Supp. 3d at 460 ("The use of a short code suggests the use of an ATDS.  However, the use of a long code does not preclude the use of an ATDS.").

Third, Plaintiff alleges he did not give prior consent for Defendants to message Plaintiff. FAC ¶ 64. Because Defendants bear the burden of proving prior consent as an affirmative defense and have provided no evidence of Plaintiff's consent, the Court concludes this element is established. See Charkchyan, 2015 WL 3660315, at *3 (citation omitted).

Thus, for Cause of Action One, Plaintiff has sufficiently alleged a claim for 12 violations of Section 227(b)(1) of the TCPA.

### b. Cause of Action Two: Violations of the TCPA Regarding the National Do-Not-Call Registry Pursuant to Section 227(c)(5)

To recover under Section 227(c)(5) of the TCPA, Plaintiff must establish the following: (1) for each call, Plaintiff received more than one other telephone call within any 12-month period; (2) the calls were made by or on behalf of the same entity; and (3) the calls were made in violations of the regulations prescribed under Section 227(c)(5).  Specifically, regulations derived from Section 227(c)(5) restrict telephone solicitations to residential subscribers who have added their numbers to the DNC, as set forth in 47 C.F.R. § 64.1200(c)(2).  Further, "a text message is a 'call' within the meaning of the TCPA." Satterfield, 569 F.3d at 952.

First, Plaintiff alleges he received 12 texts from Defendants in a span of more than two years.  FAC ¶¶ 40-56.  Specifically, Plaintiff logged the following texts as from Defendants:

1. On April 17, 2021 at 1:51 pm from (562) 222-0131;
2. On June 5, 2021 from (818) 308-1914;
3. On June 18, 2022 at 7:05 am from (833) 458-3905;
4. On July 1, 2022 at 10:13 am from (833) 458-3905;
5. On July 4, 2022 at 7:40 am from (833) 458-3905;
6. On April 25, 2023 at 10:44 am from (833) 459-3114;
7. On June 17, 2023 at 8:26 am from (833) 459-3114;
8. On July 5, 2023 at 10:13 am from (833) 459-3114;
9. On July 12, 2023 at 3:30 pm from (833) 459-3314;
10. On July 17, 2023 at 12:36 pm from (833) 459-3114;
11. On July 20, 2023 at 2:52 pm from (833) 459-3114;
12. On July 22, 2023 at 4:01 pm from (833) 459-3114.

Dkt. 65-1 at 4; FAC ¶¶ 40-56. Thus, Plaintiff sufficiently alleges he received more than one call within a 12-month period.

Second, Plaintiff alleges Defendants sent the 12 text messages from four telephone numbers belonging to Defendants. FAC ¶ 39. For the texts sent by telephone numbers (833) 459-3114 and (833) 458-3905, totaling 10 text messages, Plaintiff sufficiently alleges these texts are from the same entity. See Bird v. Pro Star Builders, Inc., No. 2:22-CV-03610-JLS-JEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) (noting that "it is reasonable to infer that the same caller is responsible for calls from the same number"). For the texts received from telephone number (562) 222-0131 on April 17, 2021, Plaintiff alleges a text shared "an image advertising 'Festival Colombiano 2021,' asking people to register and buy tickets for the event, [and] this image was followed by [a] text message in Spanish." FAC ¶ 41. For the text message received from telephone number (818) 308-1914 on June 5, 2021, Plaintiff alleges the text message was "promoting the 'Festival Colombiano.'" Id. ¶ 42. Taking into account the content of the text messages, the Court finds Plaintiff also sufficiently alleges the text messages from telephone numbers (562) 222-0131 and (818) 308-1914 are from the same entity. See Crews v. Sun Sols. AZ LLC, No. CV-23-01589-PHX-DWL, 2024 WL 2923709, at *4 (D. Ariz. June 10, 2024) (finding it plausible to infer that messages and calls from different numbers are made on behalf of the defendants as the content of the texts suggests they relate to the same promotional service).

Third, Plaintiff alleges his Cell Phone number "has been registered on the DNC since December 10, 2004." FAC ¶ 59. Plaintiff further alleges the text messages constitute "telephone solicitations" and were "an attempt to promote or sell Defendants' services." Id. ¶ 58. Specifically, according to the FAC, the text messages contain promotional language such as: "an image advertising 'Festival Colombiano 2021,' asking people to register and buy tickets for the event", a message stating "EFC 2 day ticket sale starts now – 4-pack $240 or 8-pack $400", messages asking people to register and buy ticket for the event saying "Happening Now! The Colombian Festival a / 1-DAY TICKET SALE GA, VIP & CABANAS on sale today Only[,]" or "18 years strong biggest day party and festival is coming up. SUNDAY JULY 23RD / FESTIVAL COLOMBIANO / COME PARTY ON 3 MUSIC STAGES / 11AM TO 11PM – PURCHASE." FAC ¶¶ 41, 46, 48, 49; see also FAC ¶¶ 51, 53, 54, 55, 56. Thus, Plaintiff sufficiently alleges 12 violations of Section 227(c)(5). See Doyle v. JTT Funding, Inc., No. LACV-18-06145-JAK-ASx, 2019 WL 13037025, at *9 (C.D. Cal. Dec. 2, 2019) (finding the plaintiff sufficiently alleges violations of [47 C.F.R. § 64.1200(c)(2)] by the defendant involving a phone number listed on the national do-not-call registry).

Thus, for Cause of Action Two, Plaintiff has sufficiently alleged a claim for 12 violations of Section 227(c)(5) of the TCPA.

Accordingly, with respect to the second and third Eitel factors, these factors weigh in favor of entering default judgment.

### 3.    Sum of Money at Stake

The fourth Eitel factor is "the amount of money at stake in relation to the seriousness of [the defendant's] conduct." PepsiCo. Inc., 238 F. Supp. 2d at 1176-77. The court must "assess whether the recovery sought is proportional to the harm caused by" the defendant. Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, Plaintiff seeks $8,324.61 in damages, including $7,500 in statutory damages under the TCPA and $824.61 for litigation costs.  Dkt. 65-1 at 7.  The Court finds the amount of money at stake is proportional and tailored to Defendants' alleged statutory violations.  See Doyle, 2019 WL 13037025, at *10 (finding the plaintiff's request of enhanced statutory TCPA damages, prejudgment interest, and costs proportional and tailored to the defendants' alleged statutory violations).

Accordingly, the fourth Eitel factor weighs in favor of entering default judgment.

**4.     Possibility of Dispute Concerning Material Facts**

The fifth Eitel factor is "the possibility of dispute as to any material facts in the case."  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, because default has been entered against Defendants, see dkt. 63, the Court takes "the well-pleaded factual allegations in the [FAC] as true[,]" see DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted), except insofar as they pertain to the amount of Plaintiff's damages, see TeleVideo Sys., Inc., 826 F.2d at 917-18.  Hence, no genuine dispute of material facts would preclude entry of default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177 (concluding no genuine dispute of material facts would preclude entry of default judgment because, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

Accordingly, the fifth Eitel factor weighs in favor of entering default judgment.

**5.     Excusable Neglect**

The sixth Eitel factor is "the possibility that the default resulted from excusable neglect."  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, the Court ordered Defendants to retain new counsel and to make an appearance after prior counsel's withdrawal.  Dkt. 59.  Defendants have nonetheless failed to comply with the Court's Orders to obtain new counsel or otherwise appear.  Defendants were served with the FAC, notice of entry of default, and the instant Motion.  Dkts. 20, 21, 65-1.  The Court, therefore, finds it unlikely that Defendants' default resulted from excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding default could not "be attributed to excusable neglect" where defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

Accordingly, the sixth Eitel factor weighs in favor of entering default judgment.

**6.     Strong Policy Favoring Decisions on the Merits**

The seventh Eitel factor is the strong policy favoring decisions on the merits.  See Eitel, 782 F.2d at 1472.  While the policy favoring decisions on the merits "always weighs against default judgment," Amini Innovation Corp., 768 F. Supp. 2d at 1056, this factor, "standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Defendants' failure to obtain new counsel and comply with this Court's Orders indicates an apparent unwillingness to participate in this aspect of the litigation and "makes a decision on the merits impractical, if not impossible."  See id.  Thus, the policy favoring decisions on the merits does not preclude entering default judgment.

See id.; see also Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (finding default judgment appropriate when "a decision on the merits is impossible").

* * *

Accordingly, the Eitel factors strongly weigh in favor of default judgment on Plaintiff's claims. Therefore, the Court finds default judgment against Defendants is appropriate.

## C.    PLAINTIFF'S REQUESTED RELIEF

In seeking default judgment, the movant party "has the burden of proving damages through testimony or written affidavit." Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). A default judgment may be entered without a hearing if the amount claimed is "capable of mathematical calculation." Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Here, Plaintiff requests statutory damages of $7,500, litigation costs, and injunctive relief. Dkt. 65-1 at 7. As discussed below, the Court finds Plaintiff is entitled to the requested relief.

### 1.    Statutory Damages

To determine statutory damages under the TCPA, the court should examine: "(1) the number of TCPA violations established by the plaintiff; (2) whether the violations should be counted as separate TCPA violations for the purposes of damages; and (3) the appropriate amount of damages to be awarded." Doyle, 2019 WL 13037025, at *11 (citations omitted). Under the TCPA, a person may recover "actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B). Further, "[i]f the Court finds that Defendant willfully or knowingly violated the TCPA, the Court may, in its discretion, increase the amount of the award to $1,500 per telephone call." Ewing v. Senior Life Plan., LLC, No. 19-CV-1005-BAS-LL, 2019 WL 4573703, at *7 (S.D. Cal. Sept. 18, 2019); see also 47 U.S.C. §§ 227(b)(3)(C).

Here, Plaintiff seeks a total of $6,000 for the 12 text messages ($500 each) sent by Defendants in violation of Section 227(b)(1). Dkt. 65-1 at 6. The amount is consistent with Section 227(b)(3)(C). Thus, Plaintiff has established entitlement to $6,000 in statutory damages.[2]

Plaintiff further seeks treble damages of $1,500 for the text message he received on March 8, 2025, which was after Defendants received the Complaint and were notified of the instant action, see dkt. 21. Under these circumstances, the Court finds Plaintiff has sufficiently established Defendants willfully or knowingly violated the TCPA. See Chen Wang v. Def. Tax Grp. Inc., No. CV-20-01193-CJC-MRWx, 2020 WL 6786197, at *3 (C.D. Cal. Oct. 8, 2020) (finding the defendant's text messages sent after the plaintiff served the defendant with the complaint were

---

[2] Courts generally allow separate recoveries for violations under Section 227(b)(1) and Section 227(c)(5) even if the violations occurred in the same call or text. See Ewing, 2019 WL 4573703, at *6. However, because Plaintiff only requests damages under Section 227(b)(1), see FAC at 24, dkt. 65-1 at 6-7, the Court declines to award damages under Section 227(c)(5).

willful and knowing) (citation omitted).  Thus, Plaintiff has established entitlement to $1,500 for treble damages.

Accordingly, the Court finds the evidence is sufficient to establish Plaintiff is entitled to damages in the amount of $7,500.

### 2.    Injunctive Relief

The TCPA allows for injunctive relief under Section 227(b)(3)(A).  47 U.S.C. § 227(b)(3)(A). Additionally, because such an injunction is authorized by statute, there is no need to show irreparable injury.  Doyle, 2019 WL 13037025, at *13 (citations and quotations omitted).

Here, Plaintiff seeks injunctive relief in the form of prohibiting Defendants from texting him in the future.  Injunctive relief is warranted because Plaintiff has sufficiently alleged TCPA violations.  Further, Plaintiff alleges Defendants continue texting him.  Messerlian Decl., at 3. Accordingly, Plaintiff is entitled to injunctive relief.  See Doyle, 2019 WL 13037025, at *13.

### 3.    Costs

Local Rule 54-1 states, "[t]he 'prevailing party' entitled to costs under Federal Rule of Civil Procedure 54(d) is the party in whose favor judgment is entered, unless otherwise determined by the Court."  Additionally, Federal Rule of Civil Procedure 54(d) provides, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

With respect to costs, Plaintiff seeks recovery of $824.61 as the prevailing party pursuant to Local Rule 54-1 and Federal Rule of Civil Procedure 54(d).  Ponce attests Plaintiff incurred $824.61 in costs associated with filing suit.  Ponce Decl., ¶ 15.  Accordingly, the Court finds the evidence sufficient to establish Plaintiff's claim for costs and grants relief in the amount of $824.61.

## V.
## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **GRANTED**. The Court, therefore, **ORDERS** judgment be entered in favor of Plaintiff against Defendants in the amount of $8,324.61.  Additionally, Defendants are hereby enjoined from sending text messages to Plaintiff.

**IT IS SO ORDERED**.